## THE CAMPANIA.

(Circuit Court of Appeals, Second Circuit. February 10, 1913.)

### No. 85.

1. SHIPPING (§ 81*)—LIABILITY OF VESSELS—INJURY TO OTHER VESSELS BY SWELL.

The rule that large vessels navigating New York Bay must so regulate their speed as not to injure by their swells small craft, which are seaworthy and properly loaded and navigated, is also applicable to the lower bay, though not with the same strictness. Owing to its less crowded condition and nearer proximity to the sea, incoming steamers may there

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

proceed at greater speed, provided the channel is free, but not when it is full of boats, at night, or in a fog.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 341, 344, 345, 347; Dec. Dig. § 81.*]

2. SHIPPING (§ 81*)—LIABILITY OF VESSELS—INJURY TO OTHER VESSEL BY SWELL—NEGLIGENCE OF TOWING TUG.

An incoming steamship *held* in fault for an injury to a scow in tow in lower New York Bay at night, caused by her swell, owing to excessive speed and inattention; it appearing that she did not see the tug and tow, nor hear her signals, or did not heed either. The tug also *held* in fault for having the scows made up too close together.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 341, 344, 345, 347; Dec. Dig. § 81.*

Liability of vessel for injuries caused by creation of swell, see note to The Asbury Park, 78 C. C. A. 3.]

Appeal from the District Court of the United States for the Southern District of New York; Learned Hand, Judge.

Suit in admiralty by William Beard and another against the steamship Campania; the Cunard Steamship Company, claimant. Decree for respondent, and libelants appeal. Reversed.

S. D. Smith, of New York City, for appellants.

Lord, Day & Lord, of New York City (A. B. A. Bradley, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge. [1] The rule is well settled that large steamers navigating the waters of New York Bay must so regulate their speed as not to injure by their swells small craft properly operated. The reason for the rule is pointed out in the opinion of this court in The Majestic, 48 Fed. 730, 1 C. C. A. 78:

"Such waters are not to be appropriated to the exclusive use of any one class of vessels. We do not mean to hold that ocean steamers are to accommodate their movements to craft unfit to navigate the bay, either from inherent weakness, or overloading, or improper handling, or which are carelessly navigated. But of none of these is there any proof here, and, in the absence of such proof, we do hold that craft such as the libelant's have the right to navigate there without anticipation of any abnormal dangerous condition, produced solely by the wish of the owners of exceptionally large craft to run them at such a rate of speed as will insure the quickest passage. To hold otherwise would be virtually to exclude smaller vessels, engaged in a legitimate commerce, from navigating the same waters."

Broadly, the rule is as applicable to the lower bay as to the upper bay and was applied in respect of it in Ross v. Central R. R. Co. (D. C.) 146 Fed. 608, affirmed 157 Fed. 1004, 85 C. C. A. 678. See also The St. Paul (D. C.) 124 Fed. 103. The only distinction is that by reason of closer proximity of the sea and less traffic more latitude may be allowed incoming steamers in their operation and more care may be required from small craft in their handling. Thus undoubtedly steamships may proceed there at a high rate of speed when the channel is free and no danger is to be apprehended. But they have no right to so proceed when the channel is full of boats or when, at night or by

reason of fog, it is impossible to tell what craft may be affected by their swells. So steamers may have the right to assume that tugs and tows will be better prepared to withstand heavy waves in the lower than in the upper bay. And on the other hand, while tugs may, on account of the congestion of traffic in the upper bay, be obliged there to make up their tows in close arrangement and in a manner not adapted to avoid danger from displacement waves, there may be no such necessity in the less crowded waters of the lower bay.

[2] In the present case the accident occurred at night and we are satisfied that the Campania was going at a comparatively high rate of speed. She was certainly going at such speed as to involve danger to small craft because not only was the scow in question injured by the displacement waves, but they boarded the tug itself. Apparently those on board the Campania did not see the lights of the tug and tow and did not reduce speed on their account. Nor did they regard the alarm signals if they heard them. We think that the Campania was negligent in navigating the lower bay at a high rate of speed at a time when she either could not see or did not look to see the tow liable to be injured by her swells. Her speed was such that we think she had no right to assume no craft would be injured by the waves caused by it.

On the other hand, we are not satisfied that the tug was free from fault. The scows were less than six feet apart and so close that the swells caused the rear scow to override the other. No substantial excuse is given for this method of making up the tow. The prevention of sheering seems, in respect of the lower bay, an inadequate reason. We cannot see why the rear scow could not have been towed on a much longer line. In the absence of proof showing that the arrangement was necessary, we think that the libelants cannot be heard to say that they were not negligent or that their negligence did not contribute to the injury. While the scow might have been injured by the swells in a different way in the case of a different make up, she could hardly have been injured in the same way.

It must be distinctly understood that we are not laying down any general rule as to the obligation of incoming steamers to tows in the lower bay which are in a "bunched up" arrangement. If there are substantial reasons requiring very short hawsers upon tows there it may be that such method of towing does not constitute negligence and that incoming steamers must govern their movements with respect thereto. But the present testimony fails to show in this case any substantial necessity for the arrangement.

The decree of the District Court is reversed with costs and the cause remanded with instructions to decree for the libelants for one-half damages.